UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

COURTNEY CROWE,

        Plaintiff,

NO. CIV. 05-01627 FCD EFB

<u>MEMORANDUM AND ORDER</u>

EVERGOOD ASSOCIATES, LLC, dba
Arby's Restaurant,

        Defendant.

----oo0oo----

This matter is before the court on defendant Evergood
Associates, LLC's ("Evergood") motion for summary judgment on
plaintiff Courtney Crowe's ("plaintiff") claims for (1)
discrimination in violation of Title VII; (2) constructive
discharge under California law; (3) intentional infliction of
emotional distress; and (4) negligent infliction of emotional
distress.  Plaintiff opposes the motion.  For the reasons set
forth below,[1] defendant's motion is GRANTED.

---

    [1]   Because oral argument will not be of material
assistance, the court orders the matter submitted on the briefs.
E.D. Cal. L.R. 78-230(h).

1

**BACKGROUND**[2]

2   Defendant Evergood, formerly doing business as an Arby's
3   Restaurant ("Arby's"), is a limited liability corporation
4   conducting business in Solano County, California.  (UF ¶ 2).  On
5   or about July 7, 2003, plaintiff, a 17 year-old African Amercian,
6   walked into Evergood's Arby's Restaurant and filled out an
7   application for employment.  (UF ¶ 3).  Plaintiff was interviewed
8   and hired the following day by Mr. Joseph Su ("Su"), one of
9   Evergood's owners, and Ms. Ellie Smith ("Smith"), Arby's manager.
10  (UF ¶ 4).  Plaintiff was hired as a cashier and his starting
11  hourly wage was $6.75.  (Id.)

12  Plaintiff indicated on his application and during his
13  interview that he had several scheduling limitations.  (UF ¶ 5).
14  Specifically, plaintiff was a student and his hours had to be
15  limited when school started the following month.  (Id.)
16  Plaintiff also communicated that he was not available to work on
17  Sunday mornings.  (Id.)  Additionally, plaintiff disclosed that
18  he was concurrently working at KFC.  (Id.)

19  Smith was in charge of scheduling employee's hours during
20  plaintiff's employment at Arby's.  (UF ¶ 6).  Many Arby's
21  employees, including plaintiff, asked Smith to be scheduled for
22  more hours during plaintiff's tenure.  (UF ¶ 7).  Plaintiff
23  alleges that Wang "Ricky" Saechao ("Saecho") was hired after
24  plaintiff and was immediately given more hours than plaintiff.

25

26  [2]   Unless otherwise noted, the facts herein are
    undisputed.  (See Pl.'s Resp. to Stmt. of Undisp. Facts ("UF"),
27  filed Mar. 3, 2007).  Where the facts are in dispute, the court
    recounts plaintiffs' version of the facts.  (See Pl.'s Stmt. of
28  Disp. Facts ("DF")).

2

1  (DF ¶ 7).  Plaintiff claims that throughout the time that

2  plaintiff and Saecho worked concurrently at Arby's, Saechao

3  received many more hours of work than plaintiff did.  (DF ¶ 7).

4  Furthermore, plaintiff asserts that when Saechao was hired at

5  Arby's, there were hours available but Smith refused to give the

6  available hours to plaintiff.  (DF ¶ 8).  Plaintiff claims Smith

7  could not provide a satisfactory explanation as to why Saechao

8  received more hours than plaintiff.  (DF ¶ 8).  Conversely, Smith

9  and Song Saecho, an Arby's crew led, assert that they had

10 concerns about Plaintiff's ability to perform his job duties

11 quickly and accurately.  (UF ¶ 21).  Smith eventually offered

12 plaintiff an additional two-hour shift, which plaintiff refused.

13 (UF ¶ 8).

14      Plaintiff received an increase in his hourly wage to $6.90

15 in February 2004, approximately six months after starting at

16 Arby's.  (UF ¶ 9).  The time frame and amount of plaintiff's

17 raise was similar to raises received by other Arby's employees.

18 (UF ¶ 19).

19      Plaintiff claims his working conditions at Arby's were so

20 stressful that they caused him to vomit and suffer headaches.

21 (UF ¶¶ 22-23).  After working at Arby's for ten months, plaintiff

22 quit his job at Arby's.  (UF ¶ 10).  Plaintiff's resignation took

23 place less than three weeks after his eighteenth birthday.  (UF ¶

24 10).

25                              **STANDARD**

26      Summary judgment is appropriate when it is demonstrated that

27 there exists no genuine issue as to any material fact, and that

28 the moving party is entitled to judgment as a matter of law.

                                 3

1  Fed. R. Civ. P. 56(c); <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144,
2  157 (1970).

3       Under summary judgment practice, the moving party
4       always bears the initial responsibility of informing
        the district court of the basis of its motion, and
5       identifying those portions of "the pleadings,
        depositions, answers to interrogatories, and admissions
6       on file together with the affidavits, if any," which it
        believes demonstrate the absence of a genuine issue of
7       material fact.

8  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).  "[W]here the
9  nonmoving party will bear the burden of proof at trial on a
10 dispositive issue, a summary judgment motion may properly be made
11 in reliance solely on the 'pleadings, depositions, answers to
12 interrogatories, and admissions on file.'"  <u>Id.</u> at 324.  Indeed,
13 summary judgment should be entered against a party who fails to
14 make a showing sufficient to establish the existence of an
15 element essential to that party's case, and on which that party
16 will bear the burden of proof at trial.  <u>Id.</u> at 322.

17      If the moving party meets its initial responsibility, the
18 burden then shifts to the opposing party to establish that a
19 genuine issue as to any material fact actually does exist.
20 <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574,
21 585-87 (1986); <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S.
22 253, 288-89 (1968).  In attempting to establish the existence of
23 this factual dispute, the opposing party may not rely upon the
24 denials of its pleadings, but is required to tender evidence of
25 specific facts in the form of affidavits, and/or admissible
26 discovery material, in support of its contention that the dispute
27 exists.  Fed. R. Civ. P. 56(e).  The opposing party must
28 demonstrate that the fact in contention is material, i.e., a fact

4

1   that might affect the outcome of the suit under the governing

2   law, <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986),

3   and that the dispute is genuine, i.e., the evidence is such that

4   a reasonable jury could return a verdict for the nonmoving party,

5   <u>Id.</u> at 251-52.

6       In the endeavor to establish the existence of a factual

7   dispute, the opposing party need not establish a material issue

8   of fact conclusively in its favor.  It is sufficient that "the

9   claimed factual dispute be shown to require a jury or judge to

10  resolve the parties' differing versions of the truth at trial."

11  <u>First Nat'l Bank</u>, 391 U.S. at 289.  In resolving the summary

12  judgment motion, the court examines the pleadings, depositions,

13  answers to interrogatories, and admissions on file, together with

14  the affidavits, if any.  Rule 56(c); <u>SEC v. Seaboard Corp.</u>, 677

15  F.2d 1301, 1305-06 (9th Cir. 1982).  The evidence of the opposing

16  party is to be believed, and all reasonable inferences that may

17  be drawn from the facts placed before the court must be drawn in

18  favor of the opposing party.  <u>Anderson</u>, 477 U.S. at 255.

19  Nevertheless, inferences are not drawn out of the air, and it is

20  the opposing party's obligation to produce a factual predicate

21  from which the inference may be drawn.  <u>Richards v. Nielsen</u>

22  <u>Freight Lines</u>, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985),

23  <u>aff'd</u>, 810 F.2d 898 (9th Cir. 1987).

24                          **ANALYSIS**

25  **A.   Discrimination in Violation of Title VII**

26      Plaintiff alleges defendant's actions violated Title VII of

27  the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2

28  ("Title VII").  (Complaint for Damages ("Compl."), filed Aug. 12,

1    2005, ¶ 9).  Plaintiff claims Smith reduced plaintiff's assigned

2    hours and gave him unsuitable work shifts because he was African

3    American.  (Id. ¶ 4).  Plaintiff alleges that an Asian worker,

4    Saechao, was given better and longer hours than plaintiff, even

5    though plaintiff was more qualified to work those hours.  (Id. ¶

6    5).  Plaintiff asserts that the favortism Smith showed for the

7    other workers "caused plaintiff to be the subject of ridicule and

8    scorn."  (Id.)  Further, he maintains that "the owners, managers

9    and supervisors were aware of the discriminatory treatment

10   suffered by [p]laintiff, but they chose to do nothing about

11   it...."  (Id.)

12        The United States Supreme Court set forth a three-step

13   burden-shifting test to evaluate discrimination claims under

14   Title VII.  McDonnell Douglas Corp. v. Green, 411 U.S. 792

15   (1973).  Thereunder, plaintiff must first establish a prima facie

16   case of discrimination.  In doing so, plaintiff may produce

17   indirect evidence that gives rise to an inference of

18   discriminatory motive.  See Transworld Airlines, Inc. v.

19   Thurston, 469 U.S. 111, 121 (1985).

20        Once plaintiff makes this initial showing, the burden shifts

21   to the employer to articulate a legitimate, non-discriminatory

22   reason for the adverse employment action.  See EEOC v. Hacienda

23   Hotel, 881 F.2d 1504, 1514 (9th Cir. 1989).  The ultimate burden

24   of persuasion, however, remains with the plaintiff.  Texas Dep't.

25   of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

26        If the employer articulates a legitimate, non-discriminatory

27   reason for the adverse employment action, the plaintiff must

28   demonstrate that the reason is a pretext for discrimination.  The

plaintiff may demonstrate pretext in one of two ways: "(1) indirectly, by showing that the employer's proffered explanation is unworthy of credence because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer." Chuang v. Univ. of Calif. Davis, Board of Trustees, 225 F.3d 1115, 1127 (9th Cir. 2000).  The factual inquiry regarding pretext requires a new level of specificity.  Burdine, 450 U.S. at 255.  Plaintiff must produce *specific* and *substantial* evidence that the defendant's reasons are really a pretext for discrimination.  Aragon v. Republic Silver State Disposal, Inc., 292 F.3d 654, 661 (9th Cir. 2002).

   **1.  Failure to Promote**

   To set forth a prima facie case of discrimination on the basis of race under a failure to promote theory, plaintiff must establish that (1) he belongs to a protected class; (2) he applied for and was qualified for the position; (3) he was rejected despite his qualifications; and (4) the employer sought other applicants or filled the position with someone whose qualifications were comparable to plaintiff's after rejecting him.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

   Plaintiff has satisfied the first element required to set forth a prima facie case.  Neither plaintiff nor defendant dispute that plaintiff was a member of a protected class.  Both parties agree that plaintiff is an African American.  (UF ¶ 11).

   Second, plaintiff must demonstrate that he applied for and was qualified for the open position.  Although plaintiff does not allege that he formally applied for a different position at

7

Arby's, plaintiff attests that he continuously asked Smith for more hours and was repeatedly denied. (Decl. of Courteney Crow in Opp'n to Mot. for Summ. J. ("Crowe Decl."), filed Mar. 3, 2007, ¶ 3). Moreover, plaintiff states that he could competently perform his job duties and therefore was qualified to receive more hours. (Id. ¶ 4). Defendant argues that plaintiff was not meeting his employer's legitimate expectations and was consequently, not qualified to receive additional hours. (Mem. of P. & A. in Supp. of Mot. for Summ. J. ("Def.'s MSJ"), filed Jan. 30, 2007, at 7). Smith testified at her deposition that Plaintiff was slower than the other employees in completing his tasks and did not show initiative. (Dep. of Eleanor Smith ("Smith Dep."), Ex. D to Decl. of Susan E. Bishop in Supp. of Mot. for Summ. J., filed Jan. 30, 2007, at 56:8-14.) Further, Smith asserted that she had a conversation with Song Saechao in which he let Smith know that he did not want to work with plaintiff because plaintiff is slow, does not want to work, stands around and talks to other employees, stands around and does nothing, forgets to complete tasks, and has a negative attitude. (Smith Dep. at 57:1-8). Additionally, on July 21, 2003, Plaintiff was given a "strong verbal warning" because he had a money shortage in his cash register and he took food without manager permission. (Smith Dep., Ex. A). Plaintiff offers no response to contradict this evidence. At best, it is disputed that plaintiff was qualified for the hours he requested.

However, even if plaintiff was qualified to work additional hours, he must provide evidence that his application was rejected despite his qualifications. Plaintiff declares that in February

8

2004, Saechao began working at Arby's and his requests for more hours were consistently denied. (Crowe Decl. ¶ 4). Plaintiff admits he was offered an additional one or two hour increase, which he declined because he felt it was insulting. (DF ¶ 9). Plaintiff has not proved he applied for a new position and was denied. He has merely shown that he requested a change to his current schedule and did not receive as many additional hours as he wanted.

Finally, even if plaintiff's denied request for more hours satisfies the third element, plaintiff fails on the fourth element required for a prima facie case. Plaintiff must prove that defendant filled the position with someone not of plaintiff's class whose qualifications were similar to plaintiff's. Plaintiff asserts that additional hours were given to Saechao, who was a student like plaintiff. (Crowe Decl. ¶ 4). Plaintiff has not, however, provided evidence that demonstrates plaintiff and Saechao had similar qualifications. During the course of plaintiff's employment at Arby's from July 2003 to May 2004, on two separate occasions, he missed work and did not call to give a reason for his absence and on seven different assigned work shifts he called in sick. (Decl. of George Su in Supp. of Mot. for Summ. J. ("George Su Decl."), filed Jan. 30, 2007, Ex. E). Defendant's scheduling records indicate Saechao did not miss a scheduled shift during the period in which plaintiff and Saechao were concurrently employed at Arby's. (George Su Decl., Ex. D). The scheduling records indicate that Saechao was a more reliable employee than plaintiff. Furthermore, in contrast to Smith's assessment of plaintiff, Saechao was described by Smith

1   as a very good employee who was ambitious and tried to keep
2   himself busy.  (Smith Dep. At 55:6-8).

3       In an effort to support his claims, plaintiff cites a letter
4   from George Su to the Equal Employment Opportunity Commission
5   ("EEOC") in which George Su stated plaintiff is "a valuable
6   employee and his service remains greatly appreciated."[3]  (DF ¶ 2;
7   Pl.'s Resp. to Statement of Undisputed Facts, filed Mar. 3, 2007,
8   Ex. 2).  This letter does not prove plaintiff and Saechao had
9   similar qualifications.  In fact, George Su stated that all of
10  Evergood's employees are valued and that Evergood appreciates the
11  service provided by all of its employees.  (Decl. of George Su in
12  Supp. of Reply ("George Su Reply Decl."), filed Mar. 9, 2007, ¶
13  2).  Furthermore, George Su also explained that he did not
14  believe plaintiff was a top performer at Arby's and his statement
15  that plaintiff was a valued employee was not intended to imply
16  that plaintiff was a top performer.  (Id.)  As such, plaintiff
17  has not presented evidence sufficient to substantiate the fourth
18  element of a prima facie case.

19      Notwithstanding the above, even if plaintiff had set forth a
20  prima facie case of discrimination, defendant has provided
21  legitimate, non-discriminatory reasons for not allocating
22  additional hours to plaintiff.  Smith attested that she created
23  the work schedule for Arby's employees based on what the business
24  needed, the availability of the employees and job performance of

25  _____

26      [3]  Defendant filed an objection to the EEOC letter.
    (Objection to Evidence, filed Mar. 9, 2007).  The court declines
27  to rule on defendant's objection to plaintiff's evidence because
    for the reasons stated herein, even considering this evidence, it
28  fails to raise a triable issue of fact sufficient for plaintiff
    to withstand summary judgment.

1  the employees.  (Smith Decl. at 49:15-18).  During the period in
2  which plaintiff requested additional hours, there were many other
3  employees requesting additional hours.  (UF ¶ 7).  Smith stated
4  that she attempted to accommodate requests for additional hours
5  but had to consider the budgeting requirements of the business
6  when making the schedule and could not grant all such requests.
7  (Smith Dep. at 38:24-25; 39:1-3).  During the majority of his
8  employment at Arby's, plaintiff was a student who was only
9  available to work on evenings and weekends due to his school
10 schedule.  (Dep. of Courtney Crowe ("Crowe Dep."), Ex. C to Decl.
11 of Susan E. Bishop in Supp. of Mot. for Summ. J., filed Jan. 30,
12 2007, at 45:8-9).  Further, defendant believed plaintiff's
13 potential hours were restricted because he was not available on
14 Sundays until after 3 pm and because he was also employed at KFC.
15 (Crowe Dep. at 49:16-25; DF ¶ 1).  Defendant argues plaintiff's
16 work schedules were created based on budgeting constraints, the
17 limited nature of plaintiff's availability, and plaintiff's
18 unreliability discussed above, not on the fact that plaintiff is
19 African American.

20     Because defendant has met its burden with respect to the
21 reasons for denying plaintiff's request for more hours, the
22 burden shifts to plaintiff to demonstrate the proffered reasons
23 are pretextual.  Plaintiff has offered no specific and
24 substantial evidence to support a conclusion that defendant's
25 reasons are mere pretext.[4]  In his opposition to defendant's

26 _____

27     [4]  Although not argued by plaintiff in his opposition,
   plaintiff stated in his deposition that he thought he saw Smith
28                                            (continued...)

11

motion, plaintiff states "Ms. Smith always treated Plaintiff differently because of his race." (Pl.'s Opp'n to Mot. for Summ. J. ("Pl.'s Opp'n"), filed Mar. 2, 2007, at 5). Such a statement is unsupported and conclusory. Conclusory statements without factual support are insufficient to defeat a motion for summary judgment. <u>National Steel Corp. v. Golden Eagles Ins. Corp.</u>, 121 F.3d 496, 502 (9th Cir. 1997). Even if plaintiff has established a prima facie case of discrimination, plaintiff has not met his burden of demonstrating that defendant's reasons are pretextual.

**2.   Constructive Discharge**

To set forth a prima facie case of Title VII race discrimination under a constructive discharge theory, plaintiff must prove, in light of the totality of the circumstances, that a reasonable person in plaintiff's position would have felt he had no choice but to quit due to the "intolerable and discriminatory working conditions". <u>Watson v. Nationwide Ins. Co.</u>, 823 F.2d 360, 361 (9th Cir. 1987) (quoting <u>Satterwhite v. Smith</u>, 744 F.2d 1380, 1381 (9th Cir. 1984)). The standard is an objective one which focuses on a reasonable person's reaction to the working conditions and not the subjective intent of the employer. <u>Id.</u> To establish that he was constructively discharged, a plaintiff must demonstrate the presence of "'aggravating factors', *such as* a 'continuous pattern of discriminatory treatment.'" <u>Id.</u>

---

[4](...continued)
throw away job applications filled out by African Americans. (Crowe Dep. at 91: 3-11). Smith denied that she ever threw away a job application. (Smith Dep. at 48: 12-24). Even if the court considers plaintiff's statement as evidence, this fact does not support plaintiff's assertion that *he* was denied additional hours because he was African American.

(emphasis added in original) (quoting <u>Satterwhite</u>, 744 F.2d at 1382).  The plaintiff's working conditions must be sufficiently extraordinary or egregious to amount to a constructive discharge.  <u>See</u> <u>Brooks v. City of San Mateo</u>, 229 F.3d 917, 930 (9th Cir. 2000) (citing <u>Turner v. Anheuser-Busch, Inc.</u>, 7 Cal. 4th 1238, 1246).

Plaintiff alleges that Smith's discriminatory conduct created a work environment so hostile that he was constructively discharged from his position.  Specifically, plaintiff claims Smith reduced his work hours and gave him unsuitable work shifts and that her actions caused him to be the subject of ridicule and scorn.  (Compl. ¶ 4-5).  Plaintiff has provided no evidence to support these claims.  Defendant proffered Arby's scheduling records, which demonstrate plaintiff's weekly hours remained consistent after his initial training sessions were completed.  (George Su Decl., Ex. E).  In addition, plaintiff admitted in his deposition that his hours remained largely the same after Saechao was hired.  (Crowe Dep. at 98:2-4).  Furthermore, plaintiff has not explained or provided evidence to support his allegation that his work shifts were unsuitable.  In his deposition, plaintiff stated his shifts were unsuitable because he was repeatedly put on the night crew and often had to close the restaurant.  (Crowe Dep. at 104:18-20).  Nevertheless, because of plaintiff's school schedule and Sunday commitment, he was not available to work an early shift on any day but Saturday.  (UF ¶ 5).  Moreover, plaintiff's evidence that he was the subject of ridicule and scorn is supported only by his vague and conclusory statements.  (<u>See</u> Crowe Decl. ¶ 5; Crowe Dep. at 105:19-25).  In plaintiff's

deposition, he asserts that the other employees laughed at him because he had the least amount of hours. (Crowe Dep. at 105: 19-25). Plaintiff's vague statement that he was laughed at by his fellow employees is insufficient evidence for the court to find his work environment was so extraordinary and egregious that a reasonable person would have had no alternative but to leave Arby's. See Summar v. Potter, 355 F. Supp. 2d 1046, 1057 (D. Alaska 2005) (holding that defendants' alleged snubbing, reprimanding and calling plaintiff an undesirable employee, as well as subjecting her to schedule changes are not egregious events demonstrating discriminatory working conditions); see also Li Li Manatt, 339 F.3d at 798 (holding that racial jokes, ridicule of plaintiff's accent, and act of pulling eyes back to imitate or mock the appearance of Asians were insufficient to alter the condition of plaintiff's employment); Vasquez v. County of Los Angeles, 307 F.3d 884, 893 (9th Cir. 2002) (finding no altered work conditions where employee was told that he had "a typical Hispanic macho attitude," that he should work in the field because "Hispanics do good in the field" and where he was yelled at in front of others); Kortan v. Cal. Youth Auth., 217 F.3d 1104, 1111 (9th Cir. 2000) (finding no altered work environment where the supervisor referred to females as "castrating bitches," "Madonnas," or Regina, and referred to plaintiff as "Medea"); King v. AC & R Advertising, 65 F.3d 764, 768-69 (9th Cir. 1995) (holding that a change of employment status to at-will, a reduction in managerial responsibilities, a reduction in base salary and change to potentially lucrative

1  bonus program did not constitute a constructive discharge).[5]

2     Therefore, plaintiff has not established that he was

3  subjected to an adverse employment action under either a failure

4  to promote theory or a constructive discharge theory.

5  Consequently, defendant's motion is GRANTED as to plaintiff's

6  Title VII claims.

7  **B.   Constructive Discharge under California Law**

8     Plaintiff alleges defendant's conduct described above

9  amounts to constructive discharge under California law.  (Compl.

10  ¶ 15).

11     The standard for establishing a constructive discharge under

12  California law is largely similar to the constructive discharge

13  standard under Title VII.   In California, the doctrine of

14  constructive discharge seeks to address the situation where,

15  "[i]n an attempt to avoid liability for wrongfully discharging an

16  employee, an employer may refrain from actually firing an

17  employee, preferring instead to engage in conduct causing him or

18  her to quit."  Colores v. Bd. of Trs., 105 Cal. App. 4th 1293,

19  1305 (2003) (quoting Turner v. Anheuser-Busch, Inc., 7 Cal. 4th

20  1238, 1244-45 (1994)).  As a result, in order to prevent "end-

21  runs" around claims requiring employer-initiated terminations of

22

23        [5]      Further, it is unclear that plaintiff quit Arby's
    because of the intolerable conditions.  It is undisputed that
24  plaintiff resigned from his position at Arby's less than three
    weeks after his eighteenth birthday.  (UF ¶ 10).  Plaintiff
25  testified that he began training for a new, higher paying
    position with another employer while he was still working at
26  Arby's.  (Crowe Dep. at 76: 8-13; 20: 5-17).  Plaintiff has
    provided any evidence that he sought a position with a different
27  employer because of the discriminatory conditions at Arby's and
    not because there were higher paying positions open to him after
28  he turned eighteen.

                                  15

employment, "a constructive discharge is legally regarded as a

firing rather than a resignation." <u>See</u> <u>id.</u> (quoting <u>Turner</u>, 7

Cal. 4th at 1244-45).  The standard by which a constructive

discharge is determined is "whether a reasonable person faced

with the allegedly intolerable employer actions or conditions of

employment would have no reasonable alternative except to quit."

<u>Id.</u> (quoting <u>Turner</u>, 7 Cal. 4th at 1248).  In order to establish

a constructive discharge, a plaintiff must show that "the

employer either intentionally created or knowingly permitted

working conditions that were so intolerable or aggravated at the

time of the employee's resignation that a reasonable employer

would realize that a reasonable person in the employee's position

would be compelled to resign."  <u>Id.</u> at 1305 (quoting <u>Turner</u>, 7

Cal. 4th at 1251).  For purposes of constituting constructive

discharge, the "adverse working conditions must be unusually

'aggravated' or amount to a 'continuous pattern' before the

situation will be deemed intolerable."  <u>Id.</u> at 1306.

    For the reasons set forth in the court's discussion of

plaintiff's Title VII claim, plaintiff cannot establish that he

was subjected to an adverse employment action under a

constructive discharge theory under California law.  Therefore,

defendant's motion is GRANTED as to this claim.

**C.   Intentional and Negligent Infliction of Emotional Distress**

    Plaintiff contends that defendant's conduct was "extreme and

outrageous and [was] done with the intent of causing plaintiff

severe emotional distress."  (Compl. ¶ 18).  Defendant argues

that plaintiff's emotional distress claims are barred by the

California Workers' Compensation Act ("CWCA").  (Def.'s MSJ, at

16

1  18-19).

2      The CWCA provides the exclusive remedy for injuries

3  sustained under the normal conditions of employment.  Cal. Lab.

4  Code § 3601.  Where an employee falls within the protection of

5  the Workers' Compensation scheme, as laid out in Labor Code §

6  3600, the code precludes a cause of action against the employer.

7  Id.  This prohibition extends to emotional injuries such as

8  intentional infliction of emotional distress and negligent

9  infliction of emotional distress.  Cole v. Fair Oaks Fire

10  Protection District, 43 Cal. 3d 148, 160 (1987).

11      The California Supreme Court warned that exceptions to the

12  exclusive remedy provision risk undermining the legislative

13  compromise of the Workers' Compensation Act by permitting the

14  employee to pursue a cause of action merely by tailoring the

15  claim to fall within the scope of the exception.  Id. at 160.

16  The doctrine therefore requires emotional injuries to fall within

17  the exclusive remedy provision of § 3601, so long as the basic

18  conditions of § 3600 are met and the employer's conduct does not

19  contravene fundamental public policy or exceed the risks inherent

20  in the employment relationship.  Livitsanos v. Superior Court, 2

21  Cal. 4th 744, 815 (1992).  As such, "a claim for emotional and

22  psychological damage, arising out of employment, is not barred

23  where the distress is engendered by an employer's illegal

24  discriminatory practices."  Accardi v. Superior Court, 17 Cal.

25  App. 4th 341, 352 (1993).

26      In the instant case, plaintiff has not established that

27  defendant engaged in illegal discriminatory practices.

28  Plaintiff's claim under Title VII and state law claim for

17

constructive discharge have been dismissed; therefore, there is
no basis for this court fo find that the employer's conduct
violates public policy or exceeds the risks inherent in the
employment relationship.  Consequently, plaintiff's claims for
intentional infliction of emotional distress and negligent
infliction of emotional distress are barred by the Workers'
Compensation Act.  Therefore, defendant's motion is GRANTED with
respect to these claims.

**CONCLUSION**

For the foregoing reasons, defendant's motion for summary
judgment is GRANTED.  The Clerk of the Court is directed to close
this file.

IT IS SO ORDERED.

DATED: March 20, 2007

FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE

18